IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH J. WHITBECK, | : | Civil No. 1:23-CV-00717 |
| Petitioner, | : | |
| v. | : | |
| WARDEN BETH A. RICKARD, | : | |
| Respondent. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Petitioner Joseph J. Whitbeck's ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is alleging that the Bureau of Prisons ("BOP") is refusing to apply earned time credits under the First Step Act ("FSA") based on an incorrect time credit factor. (Doc. 1.) For the reasons set forth below, the court will dismiss the habeas petition.

### PROCEDURAL HISTORY

Petitioner is serving a 24-month sentence for the offenses associated with wire fraud. *See U.S.A. v. Whitbeck*, No. 5:21-cv-00156-EGS (E.D. Pa.). He is currently housed at a satellite camp at the Federal Correctional Institution in Schuylkill, Pennsylvania ("FCI-Schuylkill"). Petitioner initiated this action by filing a § 2241 petition in May of 2023. (Doc. 1.) The court entered a show cause order on May 3, 2023. (Docs. 4, 5.) Respondent filed a response on May 16, 2023. (Doc. 7.) Petitioner filed a response to an exhibit attached to the response,

1

that the court considers as a traverse.  (Doc. 8.)  The petition is now ripe to be addressed by the court.

## DISCUSSION

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System ("the System") within 210 days of December 21, 2018, the date on which the FSA was enacted.  *See* 18 U.S.C. § 3632.  The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (5) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release custody or supervised release.  *See id.* § 3632(a).  Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs."  *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive earned time credits to be applied toward time in pre-release custody or

2

supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten (10) days of credit for every thirty days of successful participation. *See id.* Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of time credit for every thirty days of successful participation. *See id.*

Section 3624(g) sets forth the process for how FSA time credits are applied to create an earlier release date for eligible prisoners. Section 3624(g) requires, for placement in prerelease custody, that the prisoner "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" or has specific approval by the warden. 18 U.S.C. § 3624(g)(1)(D)(i). For early transfer to supervised release, § 3624(g) requires that the inmate "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." *Id.* § 3624(g)(1)(D)(ii).

Petitioner asserts that his BOP has applied the incorrect time credit factor. (Doc. 1.) Specifically, he alleges that the BOP has applied a 10-day time credit factor, when it should have applied a 15-day time credit factor. (*Id.*) The court will not reach the merits of Petitioner's argument because the court finds that Petitioner has failed to exhaust his administrative remedies.

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *See id*. at 761–62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *See id*. at 762. Exhaustion is not required, however, if there is no opportunity to obtain adequate redress; if the issue presented only pertains to statutory construction; or if the prisoner makes an affirmative showing of futility. *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3rd Cir. 1986); *Bradshaw*, 682 F.2d at 1052.

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own

confinement." See 28 C.F.R. § 542.10(a). First, an inmate should attempt informal resolution of the issue with the appropriate staff member. *See id*. § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." *See id*. § 542.14(a). The Warden is to respond to the request within twenty (20) calendar days. *See id*. § 542.18. An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *See id*. § 542.15(a). Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." *See id*.

Petitioner states that on April 4, 2023, he was informed that "no additional action can be taken at the institutional level, as auto-calculations of federal time credits are not generated locally and only generated once monthly." (Doc. 1, p. 2.)[1] He alleges futility as a basis for avoiding the exhaustion requirement by asserting that "[b]y the time I will reach the BPII appeal, it will be past the date I legally would be in BOP custody." (*Id*., p. 4.) Specifically, he alleges that if he

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

were granted 15 days of earned time credit for every 30 days of programing, he would be eligible for home confinement on June 4, 2023.  (*Id.*, p. 8.)

In this instance, exhaustion is not futile.  The issue is whether or not the BOP applied the correct time credit factor.  The documents provided with the petition show that Petitioner earned 10 days for every 30 days of programing from May 31, 2022 to September 26, 2022.  (Doc. 1-1, p. 5.)  Then, starting on September 26, 2022, Petitioner earned 15 days for every 30 days of programing.  (*Id.*)  The Warden's response to Petitioner on April 4, 2023 states that he was required to complete two full assessment periods prior to earning the time credit factor of 15.  (*Id.*)  Petitioner's first assessment was in June of 2022 and his second was in December of 2022.  (*Id.*)  According to the records submitted by Respondent, Petitioner never appealed this April 4, 2023 response.  (Doc. 7-2, pp. 2, 10.)

In contrast to the Warden's April 4, 2023 response to Petitioner's administrative remedy request, the Warden's May 16, 2023 response filed in this case, asserts that Petitioner had a time credit factor of 10 for the first two assessment periods from May 31, 2022 to June 28, 2022 and June 28, 2022 to December 25, 2022.  (Doc. 7, p. 3; Doc. 7-1, pp. 3, 11.)  Then starting on December 25, 2022, Petitioner received the time credit factor of 15.  (*Id.*)  These date discrepancies demonstrate a factual dispute that is required to be addressed as

an initial matter by the BOP, and is one of the reasons courts require petitioners to exhaust administrative remedies.  Accordingly, Petitioner's Section 2241 petition must be dismissed for failure to exhaust administrative remedies.  *See Moscato*, 98 F.3d at 762.

The court recognizes that Petitioner is requesting a time credit of 15 days to be retroactively applied from May 31, 2022 and forward.  (Doc. 1.)  However, the court declines to address the merit of this claim until Petitioner has exhausted his administrative remedies.

## CONCLUSION

For the reasons set forth above, the court will dismiss the petition for writ of habeas corpus.

A separate order will be issued.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: May 31, 2023